## GUMBEL *v.* PITKIN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued December 20, 1887. — Decided January 9, 1888.

A court of the United States, sitting as a court of law, has an equitable power over its own process to prevent abuse, oppression, and injustice; which power may be invoked by a stranger to the litigation as incident to the jurisdiction already vested, and without regard to his own citizenship.

A marshal holding property under color of a writ of attachment, even if found to be invalid, issued from a court of the United States in an action at law, can be made to hold also under a writ from a state court subsequently served by the garnishment process; and if the creditor in the process from the State intervenes in the cause in the Federal Court, and invokes its equitable powers, it is the duty of the Federal Court to take jurisdiction, and to give such relief as justice may require, and such priority of lien as the laws of the State respecting attachments permit, without regard to citizenship.

The exercise of the jurisdiction conferred upon Circuit Courts of the United States by Rev. Stat. § 915 to administer the attachment laws of the State in which the court is held, necessarily draws to itself everything properly incidental, even though it may bring into the court, for the adjudication of their rights, parties not otherwise subject to its jurisdiction; and is ample to sanction the practice of permitting the constructive levy, by attaching creditors under state process, upon property in possession of a United States marshal by virtue of an attachment made under a process from a Circuit Court of the United States for the same district, and their intervention in proceedings in the latter court where, as between state courts of concurrent jurisdiction, a similar method of acquiring and adjusting conflicting rights is prescribed.

A and B were citizens of the same State. A sued out a writ of attachment against B from a court of the State on a Saturday. On the following Monday the sheriff attempted to levy the attachment, and found the property of the debtor in the custody of the United States marshal for the district, who had seized it by virtue of writs of attachment issued and levied on the intervening Sunday from the Circuit Court of the United States, in favor of other creditors. Being unable to obtain possession of the property from the marshal, he placed keepers about the building (who remained there until the sale) and served notice of seizure upon the marshal, and also process of garnishment. Subsequently, on the same Monday, the same and other creditors levied on the same property under other writs of attachment issued from the Circuit Court of the United States on that day, and the property, which remained all the time in the custody of the marshal, was finally sold by him under the Monday writs, the Sunday writs having been abandoned. *Held*, that it was the duty of the court, having in its custody the fund arising from the sale of the property, all the parties interested in the fund being before it, to do complete justice between them, and to give to A priority, as if he had been permitted to make an actual levy under his writ.

THE statement of the case, prepared by the court, and prefixed to its opinion, was as follows:

This case was before this court on a motion to dismiss the

writ of error, the result of which is reported in 113 U. S. 545. It is now here for final disposition upon its merits.

It appears by the record that a number of creditors of Joseph Dreyfus brought several actions at law against him as a citizen of Louisiana in the Circuit Court of the United States for that district, the plaintiffs being citizens of other States, in which writs of attachment were issued and levied upon the stock of goods belonging to him contained in a store and warehouse, No. 33, Tchoupitoulas Street, in the city of New Orleans. In these actions judgments were rendered in favor of the several plaintiffs, and proceedings were had in them whereby the attached property in the hands of the marshal was sold, and the proceeds brought into the court for distribution. Pending these proceedings, and before an actual sale under the order of the court, Cornelius Gumbel, a citizen of Louisiana, the present plaintiff in error, filed a petition, called, according to the practice in that State, a petition of intervention and third opposition. In that petition he shows that on October 27, 1883, he instituted a suit in the Civil District Court for the parish of Orleans against Joseph Dreyfus, and obtained therein a writ of attachment, which he alleges was executed by a seizure of the defendant's property, being the same as that levied on by the marshal in the actions in the Circuit Court; that subsequently judgment was rendered in his favor for the amount of his claim and interest, on which a writ of *fi. fa.* was issued to the sheriff of said Civil District Court, directing the seizure and sale of the same property to satisfy his judgment; that the sheriff was obstructed in the execution of said writs, and the petitioner prevented from realizing the fruits thereof by the fact that the property subject to his attachment is in the actual custody of the marshal of the United States. The petition particularly sets out the facts constituting a conflict of jurisdiction to be, that on the morning of the 29th of October, 1883, when it was claimed that the sheriff had made his levy under the petitioner's writ of attachment, he found at the store, claiming to exercise rights of possession and control, deputy marshals of the Circuit Court in charge as keepers, and in execution of writs of attachment issued from that court; that

at the time of the seizure made by the sheriff no valid or legal writ had issued from the Circuit Court; that the writ or writs under which the marshal or his deputies were holding and claiming to hold the property had been issued on Sunday, October 28, 1883, and were absolutely null and void, both by common law and the statute law of Louisiana; that said writs so issued on Sunday, on account of their illegality, were discontinued and abandoned by the plaintiffs in the several suits in which they had been issued; that other writs subsequently issued in the same actions were issued to the marshal, and under them he detained the property, which, however, in the meantime had become subject to the seizure under the petitioner's writ in the hands of the sheriff. The petition prays that the property in the custody of the marshal then advertised for sale should be restored to and placed in the hands of the civil sheriff, to be sold under the petitioner's writs of execution, in order that the proceeds might be distributed by the Civil District Court, or, if sold by the marshal, that the proceeds of the sale be ordered to be paid over to the civil sheriff, to be distributed by the Civil District Court, and also "for such other and further aid, remedy, and relief as the nature of the case may require and law and equity permits." This petition of intervention was filed by leave of the court, and with it a transcript of the proceedings in the Civil District Court in the case of *Gumbel* against *Dreyfus*. The motion of the intervenor for a stay of the marshal's sale of the goods levied on was denied, and thereupon, on January 21, 1884, by leave of the Circuit Court, an amended and supplemental petition of intervention was filed by him, and also on the 8th of March, 1884, a second supplemental petition. In these, the petitioner claims that if it be held in fact and in law that the marshal of the Circuit Court had effected a seizure of the property attached, which vested the jurisdiction of the Circuit Court as to its disposition and the distribution of its proceeds, and rendered impossible any actual seizure or physical control over the property by the civil sheriff, the intervenor is entitled to have his attachment recognized by the Circuit Court, and to share in the distribution of the proceeds of the property accord-

ing to priority of time of seizure under the laws of the State; and alleges that in addition to the efforts made and proceedings had in behalf of the intervenor, the United States marshal had been served with interrogatories as garnishee, and in every legal and practicable way notified of the writ held by the sheriff, whereby a valid seizure was effected on petitioner's behalf, to take rank according to the time at which it was thus executed; and claims, in consequence, to be entitled to payment out of the fund in preference to all other attaching creditors.

The attaching creditors, plaintiffs in the Circuit Court, were made parties to these petitions of intervention, to which they appeared and answered. The cause came on for hearing in the Circuit Court, and judgment was rendered therein dismissing the petitions of intervention and distributing the entire fund in court, being the proceeds of the sales of the attached property, to the other parties plaintiffs in the attachments in that court. The facts in relation to the levies under the attachments are found by the court as follows (20 Fed. Rep. 426):

" Various creditors had obtained attachments on Sunday in this court which were also levied on Sunday. The same and other creditors obtained attachments in several suits also in this court, some early Monday morning, shortly after midnight, and others between 8 and 10 o'clock A.M., which were also levied upon the same property.

" The intervenor had obtained his writ from the state court on Saturday. Early Monday morning, shortly after midnight, and while the marshal was holding possession of the property under the Sunday writs alone, the sheriff came to the store where the property was situated for the purpose of serving the writ and demanded entrance, which the marshal refused. The sheriff placed his keepers around the building and guarded the same continuously down to the time of the sale, and served notice of seizure and subsequently process of garnishment upon the marshal in charge of the store [before the service of any of the Monday writs] who had executed the process of attachment from this court. The marshal preserved his possession without interruption from the moment of seizure down to the

time he sold the property under the Monday writs, the Sunday writs having been abandoned. The property seized was the wines and brandies, etc., the stock of a wholesale liquor store." p. 427.

The grounds of law on which the Circuit Court denied the right of the intervenor to participate in the distribution of the proceeds of the sale are stated as a conclusion of law, as follows:

"1. As to the effect of what was done by the sheriff, nothing is before the court except the proceeds of a sale. They and they alone can have an award who show title; and, since all claim under process against the property of a common debtor, those alone who show a levy of the process upon the property ; for in this State the issuance and existence of the process create no lien. It disposes of this part of the case to say that the sheriff made no seizure, no caption of the property. Its possession was withheld from him and access to it was forcibly denied him. Whether this was done under color of a good or bad writ, or without any writ, all seizure was prevented and no lien was effected. This would end the case of the intervenor as to any privilege upon the fund, unless he can maintain that the marshal, holding under color of a writ from this court, can be made to hold also under a writ from the state court subsequently served by the garnishment process. The authorities for this proposition cited are *Patterson* v. *Stephenson*, unreported, decided by the Supreme Court of Missouri, at the April term, 1883, and *Bates* v. *Days*, 17 Fed. Rep. 167. Those cases are put by the courts which decided them upon a statute of the State of Missouri, which was deemed to have been adopted by the practice act of Congress regulating the procedure in the Federal courts. In Louisiana we have no such statute, and there is, therefore, no need to discuss the question as to what would be the legal consequences if one, existed. In this State the courts are to be guided by the doctrine which is settled by the cases of *Hagan* v. *Lucas*, 10 Pet. 400, and *Taylor* v. *Carryl*, 20 How. 583, to the effect that when property susceptible of manual delivery has been seized and is held by the officer of and under pro-

cess from the court of one jurisdiction, it is incapable to be subjected to seizure by another officer of and under process from the court of another jurisdiction. The authorities are collated in *Wilmer* v. *Atlanta and Richmond Air Line Railroad Company*, 2 Woods, 409, 427, 428. It follows, then, that since the goods were and continued to be in the physical possession and custody of the marshal, under writs of this court, the intervenor could have acquired and did acquire no interest in the goods under his writ from the state court, and he can have no claim to the proceeds arising from their sale." pp. 427, 428.

Proceeding further in its judgment to determine the order of priority of the creditors who attached under the writs from that court, the Circuit Court said: "No right is claimed, and no right could have been acquired under the Sunday writs or seizures. The statute prohibits (Civ. Pr., art. 207) the institution of suits, and all judicial proceedings on Sunday. The question then is as to the priority of the attachments which were issued on Monday, *i.e.,* after 12 o'clock on Monday morning." The judgment then proceeds to award priority among these writs according to the order in which they were levied, after they came into the possession of the marshal, by him. On the trial of the issues upon the petitions of intervention, as appears by a bill of exceptions in the record, the intervenor offered in evidence a transcript of the proceedings and judgment of the Civil District Court for the parish of Orleans in the suit in which he was plaintiff against Dreyfus, to the introduction of which the defendants objected. From that transcript it appears that by a petition in that cause it was alleged that Pitkin, the marshal of the United States for the Eastern District of Louisiana, was indebted to the defendant, or had property and effects in his possession or under his control belonging to the defendant, wherefore it was prayed that Pitkin, as marshal, be made garnishee, and ordered to answer under oath the accompanying interrogatories filed therewith. A citation was issued thereon to Pitkin requiring him to answer the interrogatories, which, according to the sheriff's return, was, together with a copy of the original and supple-

mental petition and interrogatories in the cause, served on Pitkin in person on October 29, 1883, at 25 minutes past 12 A.M. The sheriff's return to the writ of attachment is as follows:

"Received Oct. 27th, 1883, and on the 29th day of October, 1883, proceeded to execute this writ against the movable property of def't described more fully in my notice of seizure when I found the said property in possession of the U. S. marshal, and by instructions of pl't'ff's att'y placed my keepers on the sidewalk in front of said property, and kept them continually, both night and day, until January 25th, '84, when they were withdrawn by order of the pl't'ff's att'y; also made general seizure by garnishment in the hands of J. R. G. Pitkin, marshal of the U. S. Dist. Court; from said general seizure nothing has as yet come into my possession or under my control, and this return is made up to date for the purpose of enabling the clerk of this court to complete a transcript of appeal."

It further appears from the transcript that on November 7, 1883, Pitkin appeared in the Civil District Court as garnishee without answering the interrogatories, and excepted to the jurisdiction of the court. On November 16, 1883, judgment was rendered by the Civil District Court in favor of Gumbel and against Dreyfus for the sum of $23,184.57, with interest from October 24, 1883, "with lien and privilege on the property herein attached, and that plaintiff's claim be paid by preference over and above all other creditors, with costs of suit."

On December 6, 1883, a rule was granted by the Civil District Court upon Pitkin, requiring him to show cause why he should not desist from interference with the sheriff in the custody of the attached property or be punished for contempt of the court in obstructing the execution of its orders and judgments; and also a rule was granted December 17, 1883, upon the marshal, jointly with the attaching creditors in the Circuit Court of the United States, requiring them to show cause why the property seized under the attachment issued at the suit of Gumbel should not be sold, and the proceeds of the sale distributed in that cause. On January 4, 1884, some

of the defendants to that rule, without answering the same, excepted to the jurisdiction of the court, on the ground " that it is incompetent to either sell the property, or determine the rank of the attaching creditors, or distribute the proceeds of said property, for the reason that the said property was in the hands of the United States marshal under attachment issued by order of the judge of the Circuit Court of the United States for the Eastern District of Louisiana at the time of said pretended seizure by the civil sheriff." On January 14, 1884, the transcript of the record shows the following entry : " The rule and exception herein fixed for this day was by consent of counsel ordered to be continued indefinitely."

*Mr. Charles F. Buck* for plaintiff in error. *Mr. George H. Braughn* was with him on the brief.

*Mr. George Denegre, Mr. Walter D. Denegre* and *Mr. Thomas L. Bayne* filed a brief for defendants in error, Hoffheimer & Brothers.

*Mr. Assistant Attorney General Maury,* with whom was *Mr. Thomas J. Semmes,* for defendants in error, Maddox; Hobart & Co., Kerbs & Spies; and Corning & Co.

The case turns on the question of seizure by the garnishment proceedings.

Actual physical possession is necessary to constitute a valid seizure under a writ of *fieri facias,* or a writ of attachment, unless there be garnishment proceedings; then service of interrogatories on the garnishee suffices. *Huggerty* v. *Wilber,* 16 Johns. 287; *S. C.* 8 Am. Dec. 321; *Scott* v. *Davis,* 26 La. Ann. 688; *Stockton* v. *Downey,* 6 La. Ann. 585; *Page* v. *Generes,* 6 La. Ann. 549, 551; *Dennistown* v. *New York Steam Faucet Co.,* 6 La. Ann. 782; *Nelson* v. *Simpson,* 9 La. Ann. 311. It is admitted that priority of privilege is dependent upon the date of seizure, and not upon the date of issue of the writ, and, when necessary, fractions of the day will be noticed. C. P. Art. 723; *Schofield* v. *Bradlee,* 8 Mart. 495; *Hepp* v. *Glover,* 15 La. 461; *S. C.* 35 Am. Dec. 206; *Harmon* v. *Juge,* 6 La. Ann. 768.

Indeed, seizure alone will not confer priority unless it is followed up by a judgment in the lifetime of the debtor or before a *cessio bonorum*, or surrender to his creditors; the death or insolvency of the debtor before judgment defeats the attachment. *Hanna* v. *Creditors*, 12 Mart. 32; *Beck* v. *Brady*, 6 La. Ann. 444; *Fisher* v. *Vose*, 3 Rob. La. 457; *S. C.* 38 Am. Dec. 243 ; *Collins* v. *Duffy*, 7 La. Ann. 39. The case is thus reduced to the effect of the seizure in the hands of the marshal as garnishee.

The proceedings show that the plaintiff in error relied all the while on his *physical seizure*, or attempted physical seizure, and not on his *garnishment* proceedings; he never attempted to obtain *judgment against the garnishee;* the proceedings against the garnishee were stopped by his exception to the jurisdiction of the court, on the ground that it could not hold him liable as garnishee in his *official capacity* for property in his *official possession.*

The garnishment proceedings were not relied on; what the plaintiff in error has always claimed is, the right of the sheriff to hold the goods, as first possessor under the state writ. This contention fails if no such seizure was made, and there should be an end of his case. *Hagan* v. *Lucas*, 10 Pet. 400, and *Taylor* v. *Carryl*, 20 How. 583, settle the question that goods in possession of the marshal are not *susceptible of seizure* by process from a state court. See also *Pullam* v. *Osborne*, 17 How. 471. On the same principle it has been decided that a debt cannot be attached in a state court after suit has been brought upon it in a court of the United States. *Wallace* v. *McConnell*, 13 Pet. 136; *Thomas* v. *Wooldridge*, 2 Woods, 668. There cannot be two possessions of the same goods at the same time by two separate courts under writs issued from different jurisdictions. The Louisiana statute referred to in the brief of the appellant is a statute regulating the adjustment of privileges when property has been seized by different courts of the State; this adjustment is to be made by the court by whose mandate the property was first seized, and for that purpose *all suits* are to be transferred to such court. It is similar to the state insolvent law, which provides that when the debtor makes a *cessio*

*bonorum*, all suits against his person and property are to be transferred to the insolvent court. The Missouri statute is totally dissimilar. The Louisiana statute merely provides what court shall have jurisdiction to classify privileges in case of conflicts between creditors; the Missouri statute does not legislate on the subject of *jurisdiction*, but confers power on *the court*, when the *same property is attached in several actions* to determine *all controversies which may arise between any of the plaintiffs* in relation to the *property, priority*, validity, good faith and effect of the different attachments, *and* to *dissolve any attachment partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require*. No court in Louisiana possesses any such power; nor is any such discretion confided to any judicial tribunal in the State.

The facts show that the marshal was in possession of the goods *qua* marshal; such possession was the possession of the court which issued the writ by virtue of which the marshal took possession.

The marshal was in possession *virtute officii*. In *Sanderson* v. *Baker*, 3 Wilson, 309, it was decided by the Court of Common Pleas, as long ago as 1772, that trespass *vi et armis* lies against a sheriff for the act of his bailiff in taking the goods of A, instead of the goods of B, under a *fi. fa.* This principle has been approved in the later cases. In *Smart* v. *Hutton*, 2 Nev. & Man. 426, the sheriff's officer arrested a defendant without authority of law, but the sheriff was held liable for any act of his deputy *colore officii*. The same principle has been followed in Massachusetts. *Campbell* v. *Phelps*, 17 Mass. 246; *Knowlton* v. *Bartlett*, 1 Pick. 271. The same in substance is said in the case of *Walden* v. *Davison*, 15 Wend. 575.

The taking by a marshal of the United States, upon a writ of attachment, on *mesne* process against one person, of the goods of another, is a breach of the condition of his official bond, for which his sureties are liable. This was recently decided by this court in *Lammon* v. *Feusier*, 111 U. S. 19. See also *Freeman* v. *Howe*, 24 How. 450; *Krippendorf* v. *Hyde*, 110 U. S. 276. If a writ of replevin could not reach the property, how could a writ of attachment or a garnishment

proceeding under a writ of attachment issued by a state court affect it?

The issue of the Sunday writs was not an unlawful act. We never had a Sunday law in Louisiana until 1886, and that law merely requires stores, shops, saloons and all licensed places of business of a certain class to be closed. At no time was it unlawful to make a contract on Sunday, nor is it unlawful now, except in the prosecution of business in the prohibited places. Prior to 1886, Sunday traffic was subject to the police regulations of municipal authority. *State* v. *Bott*, 31 La. Ann. 663; *Minden* v. *Silverstein*, 36 La. Ann. 912, 916.

But the Code of Practice provides in article 207, "That no *citation* can issue, no *demand* can be made, no *proceeding had*, nor *suits instituted* on *Sundays*, on the 4th of July, or the 8th of January, or the 25th of December, 22d of February or on Good Friday; nor shall any arrest be made after sunset on any individual within his domicile."

The case stated finds that the writs of attachment were obtained on Sunday; the issue of such writs by the clerk of the court was a mere ministerial act, and is not a *judicial proceeding*.

We submit that there is no law in Louisiana which prohibits the issue or the levy of a writ of attachment on Sunday. We have no common law, and if we had, the common law did not forbid any but *judicial* acts on Sunday; all other prohibitions are statutory. *Swann* v. *Broome*, 3 Burrow, 1595; *Pearce* v. *Atwood*, 13 Mass. 324, 347. Our statute does not allow a *citation* to issue, nor a demand to be made on Sunday, or other *dies non;* nor can a *suit* be instituted on Sunday, nor can a *judicial proceeding* be had on that day.

But in a suit instituted on Saturday, a *writ of attachment* may be issued on Sunday by the clerk, because the *issue of the writ* is a mere *ministerial act;* and there is no law which prevents the levy of a writ of attachment on Sunday.

The issue of the writ of attachment by the clerk has been held to be the performance of a mere ministerial duty. *Purdee* v. *Cocke*, 18 La. 482, 485. So it is held that the receiving of a verdict on Sunday is not a judicial proceeding. *Hogh-*

*taling* v. *Osborn,* 15 Johns. 119; *Baxter* v. *People,* 3 Gilman, 368. So the issue of a summons on Sunday by a justice of the peace, was held to be a ministerial act. *Smith* v. *Ihling,* 47 Mich. 614. So the taking of a recognizance on Sunday was regarded as a ministerial act, and therefore valid. *Johnson* v. *People,* 31 Ill. 469, 473. So the Supreme Court of Massachusetts seemed to treat the issue of a writ of attachment, although it was unnecessary to decide the point. *Johnson* v. *Day,* 17 Pick. 106, 109.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The grounds on which the Circuit Court proceeded in denying the relief prayed for by the intervenor, and which have been reiterated in argument at the bar, are, 1st, that no levy of the writ of attachment was in fact made by the sheriff, because he did not and could not acquire actual possession of the property sought to be seized, then in the possession of the marshal; it being essential, under the laws of Louisiana, to the validity of the levy of such a writ that the officer should thereby acquire actual and exclusive possession of the property to be attached; and, 2d, that no levy by the sheriff under his writ of attachment was effected by the notice served upon the marshal as garnishee, because the marshal, as an officer of the Circuit Court of the United States, was not amenable to, and could not be affected by, process from a state court.

It may be remarked in the outset, that if the intervenor is entitled to any relief, the mode in which he has sought it is appropriate. On the motion to dismiss the writ of error (113 U. S. 545) it was decided that his right to intervene by petition in this action was justified by the laws of Louisiana and by the decision of this court in *Freeman* v. *Howe,* 24 How. 450. In *Krippendorf* v. *Hyde,* 110 U. S. 276, 283, it was said: "The grounds of this procedure are the duty of the court to prevent its process from being abused to the injury of third persons, and to protect its officers and its own custody of property in their possession so as to defend and preserve its jurisdiction, for no one is allowed to question or disturb that

possession except by leave of the court. So the equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustice, are inherent and equally extensive and efficient, as is also their power to protect their own jurisdiction and officers in the possession of property that is in the custody of the law. *Buck* v. *Colbath*, 3 Wall. 334; *Hagan* v. *Lucas*, 10 Pet. 400. And when, in the exercise of that power, it becomes necessary to forbid to strangers to the action the resort to the ordinary remedies of the law for the restoration of property in that situation, as happens when otherwise conflicts of jurisdiction must arise between courts of the United States and of the several States, the very circumstance appears which gives the party a title to an equitable remedy, because he is deprived of a plain a. d adequate remedy at law; and the question of citizenship, which might become material as an element of jurisdiction in a court of the United States when the proceeding is pending in it, is obviated by treating the intervention of the stranger to the action in his own interest as what Mr. Justice Story calls in *Clarke* v. *Matthewson*, 12 Pet. 164, 172, a dependent bill." In that case it was further stated, speaking of contests between execution or attachment creditors in the Federal courts on the one hand and strangers to the actions claiming title to the property on the other, that "if the statutes of the State contain provisions regulating trials of the right of property in such cases, it might be most convenient to make them a part of the practice of the court as contemplated by §§ 914, 915, 916 of the Revised Statutes." p. 287.

In the subsequent case of *Covell* v. *Heyman*, 111 U. S. 176, it was decided that the principle that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court and under its control for the time being, applies both to a taking by a writ of attachment under a mesne process and to a taking under a writ of execution. It was there also decided that "property thus levied on by attachment or taken in execution is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it

remains in the possession of the officer it is in the custody of the law. It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right to be asserted otherwise and elsewhere, as already sufficiently explained, that furnishes to the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him." p. 184. So in *Lammon* v. *Feusier*, 111 U. S. 17, 19, it was said: "When a marshal upon a writ of attachment on mesne process takes property of a person not named in the writ, the property is in his official custody and under the control of the court, whose officer he is, and whose writ he is executing; and, according to the decisions of this court, the rightful owner cannot maintain an action of replevin against him, nor recover the property specifically in any way except in the court from which the writ issued."

It thus appears that the plaintiff in error came rightfully into the Circuit Court for whatever relief, either of a legal or equitable nature, that court was competent to give. It is equally true that he must depend exclusively on the Circuit Court for such relief as he can there obtain, for it is quite clear that the Civil District Court acquired no jurisdiction over the property under the writ of attachment held by the sheriff, nor any jurisdiction over the person of the marshal as garnishee, by virtue of the notice served upon him to answer interrogatories as such. The sheriff acquired no such possession of the property as to bring it within the custody of the state court, and the marshal was not amenable to the state court as its custodian for property which he claimed to hold officially under process from the Circuit Court. The Circuit Court alone had jurisdiction to inquire into and determine all questions relating to the property, and the rights growing out of its custody held by its own officer under color of its authority, saving, of course, all rights of action against the marshal personally for his wrongful and illegal acts resulting in injury to third persons, except such as involved the legal right to take the property out of his possession.

As we have already seen, and as has been many times declared by this court, the equitable powers of the courts of the

United States, sitting as courts of law, over their own process, to prevent abuse, oppression and injustice, are inherent, and as extensive and efficient as may be required by the necessity for their exercise, and may be invoked by strangers to the litigation as incident to the jurisdiction already vested, without regard to the citizenship of the complaining and intervening party. This is the equity invoked by the plaintiff in error, which was denied to him by the Circuit Court.

It is certainly true, and must be conceded, as was adjudged in the court below, that Gumbel acquired under his writ of attachment no strict and technical legal standing as an attaching creditor with an actual levy on his debtor's property. There was no such actual seizure of the property by the sheriff as was necessary to constitute a levy at law. That seizure was prevented, and the attempted levy thus defeated, by the wrongful and illegal act of the marshal. That officer had taken possession of the goods on Sunday, under color of process issued the same day, illegal by the laws of the State, and as such discontinued and abandoned by the parties. The possession thus acquired was made use of for the benefit of the plaintiffs in attachment in the Circuit Court to defeat the execution of the process of the state court. It was illegal in the marshal to have taken possession of the goods under the writs in his hands issued on Sunday. It was his duty, when the sheriff appeared with a lawful writ from the state court, to surrender possession to him. His failure and refusal to do so was an actionable injury in which the present plaintiff in error, in a suitable action at law, would have been entitled to recover, both against him and against the attaching creditors for whom and at whose request he was acting, the whole amount of the loss, measured by what the plaintiff would have made if he had secured the benefit of the priority to which he would have been entitled by a first levy of his attachment upon the property. Instead of resorting to such an action, the plaintiff in error appealed to the Circuit Court for that equity which that court was entitled to administer by virtue of its duty to redress injuries occasioned by the abuse of its process on the part of its officers and suitors. Why should that equity not

be administered in this proceeding? The court had before it all the parties, together with the property which was the subject of contention. The remedy was plain, simple and effectual. It could award to the intervenor the position in respect to the property and fund in court which, but for the injustice done him by the conduct of its officer and suitors in the abuse of its process, he would have acquired by a legal levy under his attachment. Neither the marshal nor the creditors for whose benefit he acted ought to be allowed to say that the intervenor had been deprived of the substance of his rights, because by their illegal and oppressive conduct he had been prevented from clothing it with technical forms. It is a cardinal maxim that no one shall be allowed in a court of justice to take advantage of his own wrong. No more flagrant instance of a violation of that fundamental principle can be conceived than that which is furnished by the circumstances of the present case. The very ground, and the sole ground, on which relief is denied to the plaintiff in error is that he has been prevented from asserting it legally by the violence and wrong of those who now deny it.

This principle has especial application in cases of proceedings by attachment. "The existence of the proceeding by attachment" (it is said in Drake on Attachment, § 272), "could hardly fail to give rise to fraudulent attempts to obtain preference, where the property of a debtor is insufficient to satisfy all the attachments issued against him. When it transpires that there are circumstances justifying resort to this remedy, the creditors of an individual usually press forward eagerly in the race for precedence, sometimes to the neglect of important forms in their proceedings, and sometimes without due regard to the rights of others. On such occasions, too, notwithstanding the safeguards generally thrown around the use of this process, and in violation of the sanctity of the preliminary oath, it has been found that men in collusion with the debtor, or counting on his absence for impunity, have attempted wrongfully to defeat the claims of honest creditors by obtaining priority of attachment on false demands. There is, therefore, a necessity — apparent to the most superficial

observation — for some means by which all such attempts to overreach and defraud, through the instrumentality of legal process, may be summarily met and defeated. Hence provision has been made in the statutes of some States for this exigency, and where such is not the case, the courts have broken the fetters of artificial forms and rules, and attacked the evil with commendable spirit and effect." Accordingly, it has been held in New Hampshire, in the absence of a statute authorizing an attaching creditor to impeach the good faith of previous attachments, that on a suggestion that a prior attachment was prosecuted collusively between the plaintiff and defendant for the purpose of defrauding creditors, the court would permit a defence to be made by the creditors in the name of the defendant, *Buckman* v. *Buckman*, 4 N. H. 319 ; and that a subsequent attaching creditor might move to dismiss a prior attachment on the ground that there was no such person as the plaintiff therein. *Kimball* v. *Wellington*, 20 N. H. 439.

In Virginia it has been held that a junior attaching creditor may come in and defend against a senior attachment by showing that the debt for which it issued had been paid. *McCluny* v. *Jackson*, 6 Grattan, 96. In *Smith* v. *Gettinger*, 3 Geo. 140, it was decided upon general principles, and without any aid from statutory provisions, that a judgment in an attachment suit may be set aside in a court of law upon an issue, suggesting fraud and want of consideration in it, tendered by a junior attaching creditor of the common defendant. In Massachusetts provision is made for appropriate relief in such cases by statute. *Lodge* v. *Lodge*, 5 Mason, 407 ; *Carter* v. *Gregory*, 8 Pick. 164 ; *Baird* v. *Williams*, 19 Pick. 381 ; *Swift* v. *Crocker*, 21 Pick. 241.

The case of *Paradise* v. *Farmers' and Merchants' Bank*, 5 La. Ann. 710, is an important adjudication, having a direct bearing upon the point now under consideration. A suit in chancery was instituted in Memphis, Tennessee, by stockholders of a bank there against the bank and its president and directors, in which a receiver was appointed, an injunction obtained, and an order for the delivery of the assets of the bank

to the receiver served on the president, who, during an unsuccessful attempt to enforce the process of the court, obtained possession of the assets and ran off with them to New Orleans, where they were attached in his hands by a creditor of the bank, and were claimed in the attachment suit by the receiver appointed by the court in Tennessee. The courts of Louisiana ordered the attached property to be released from the process and delivered to the receiver. The Supreme Court of the State, in its opinion, said: " The property which thus stands before us for adjudication thus appears to have been brought within the jurisdiction of this court in disobedience and in violation of the process of a court of a sister State, and in fraudulent violation of the rights of property of its real owners. It is proved that the process of the court of chancery and a writ of injunction and an order directing the delivery of the assets of the bank forthwith to the receiver appointed, were duly served on Fowlkes, [the president,] as well as the directors of the bank. The grounds on which it is contended the judgment of the District Court [ordering the property to be delivered to the receiver] is to be reversed are: 1, that a receiver in chancery cannot maintain a suit without special authority from the court which appoints him; 2, that the possession of the property attached not having been in the receiver, it is liable to the process of attachment at the instance of a *bona fide* creditor. We will not inquire into the technical question whether the authority of the chancellor is necessary to institute a suit at law; it is sufficient for us that property, in relation to which an order of a court of a sister State of competent jurisdiction has been issued, has been fraudulently or forcibly withdrawn from its jurisdiction by a party to the suit, and that the injunction issued in this case by the chancellor is still in force and binding upon the offending party. The order of the court of chancery is a sufficient authority for the intervenor [the receiver] to receive the assets of the bank; and the delivery to him will be a good delivery binding upon the bank, as well as in the furtherance of justice. We have uniformly discountenanced all attempts, in whatever form they may be made, of making our courts instruments for defeating

the action of courts of other States on property within their jurisdiction by means of clandestine or forcible removal to this State. The only decree which we render in such cases is that of immediate and prompt restitution, or one preventing any rights to be acquired by these attempts to defeat the ends of justice. This is an answer to the question raised concerning the peculiar right of the creditor. The only right which he in any event could reach would be subordinate to the injunction from the operation of which this property has been attempted to be removed. Not only on general principles, but on the cases cited by the learned judge who decided this case, the claim of the plaintiff to subject this property to attachment is without the shadow of right."

The case just cited was not so flagrant as the present. The attaching creditor in that case was innocent of any participation in the wrong involved in the removal of the property from the jurisdiction of the Tennessee court. Here the attaching creditors are the very parties at whose instance and for whose benefit the wrong upon the intervenor has been perpetrated. Upon general principles, therefore, and in the exercise of its equitable power as a court of law to prevent and redress injustice committed upon a stranger by the abuse of its process on the part of its officers and suitors, the Circuit Court ought to have granted the relief to the intervenor which by its judgment it denied.

There is, however, another ground on which the same conclusion may safely rest. By § 915 of the Revised Statutes, the Circuit Court is authorized, in favor of suitors in that court, to administer the attachment laws of the State in which the court is held, and the exercise of this jurisdiction necessarily draws to itself everything properly incidental, even though it may bring into the court for the adjudication of their rights parties not otherwise subject to its jurisdiction. So that, in *Krippendorf* v. *Hyde*, 110 U. S. 276, 284, where the statute of Indiana regulating the process of attachment provided that after the institution of the suit, and before final judgment, any creditor of the defendant might file and prove his claim with the right to participate in the distribution of the proceeds of the

attached property, it was said that in an action rightly instituted in the Circuit Court, in which the property of the common debtor was attached, all other creditors might appear in pursuance of the state law and share in the distribution, although citizens of the same State with the defendant, and although the amounts due them were less than the jurisdictional sum of $500.

In the case of *Bates* v. *Days,* 17 Fed. Rep. 167, decided by the Circuit Court of the United States for the Western District of Missouri, it was held, first by Judge Krekel, and affirmed by the circuit judge, McCrary, on a motion for a rehearing, that questions of priority between attaching creditors, some of whom were plaintiffs in that court and some in the state court, might be determined on proceedings for distribution of the proceeds of sale of the attached property made by the marshal, who had the actual custody by virtue of the first seizure, upon the ground that § 915 of the Revised Statutes incorporated, as a part of the practice of the courts of the United States for that district, § 447 of the Statutes of Missouri, which provided that : " Where the same property is attached in several actions, by different plaintiffs against the same defendant, the court may settle and determine all controversies which may arise between any of the plaintiffs in relation to the property, and priority, validity, good faith, and effect of the different attachments, and may dissolve any attachment, partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require," it being held in that State that if the writs issue from different courts of co-ordinate jurisdiction, such controversies shall be determined by that court in which the first writ of attachment was issued and levied. In the case referred to, the first attachment was issued out of the Circuit Court of the United States, the marshal having possession of the property by virtue of a seizure under that writ. The writ of attachment issued out of the state court was returned by the sheriff, stating that he had levied the same on the stock of goods of the defendant, subject to the attachment of the plaintiff, in the United States court, and that he notified the marshal of the attachment and

levy, and summoned him as garnishee. In deciding the case, it was said by the district judge that: "The executive officers of courts should understand that when writs issue from state and federal courts against the same property, the officer first obtaining possession, on being notified that a state court officer, as in this case, has a writ against the same property, all reasonable facilities should be offered such officer to make a full return, and the officer holding the property should show in his return whatever was done by such state court officer. Federal and state courts are not foreign courts, or in hostility to each other, in administering justice between litigants. The citizen of the State in the federal court is as much in his own court as in the courts of the State. The rights he has he cannot be deprived of in a federal court. The citizen of another State has the same claim to a debtor's property in the State of Missouri as a resident, but no more."

The same principle is asserted by the Supreme Court of the State of Missouri in the case of *Patterson* v. *Stephenson*, 77 Missouri, 329, 333, as between coördinate state courts. It was there said: " On principle and reason, the validity of successive levies by the same officers on the same property is a recognition of the practical fact, that there may be, after a taking into the custody of the law the property of the debtor, an effectual imposition of another writ without an actual caption, or a taking away of the property, or an appropriation of it for the time being, to the attaching creditor's claim. It is held in such case that the second writ in the hands of the same officer is executed by him *sub modo*, so 'it will be available to hold the surplus after satisfying the previous attachment, or the whole, if that (the first) attachment should be dissolved. In such case no overt act on the part of the officer is necessary to effect the second levy, but a return of it on the writ will be sufficient. So, where the property is in the hands of a bailee, the officer who placed it there may make another attachment, without the necessity of an actual seizure, by making return thereof, and giving notice to the bailee.' Drake on Attachment, § 269. In *Tomlinson* v. *Collins*, 20 Conn. 364, it is held in such case that the second attachment is valid even without any notice to the bailee.

" Evidently the making of a second levy by the same officer is recognized because it does not disturb his custody of the property. If the rule which prevents one officer from levying on goods seized by another officer rests mainly on the prevention of conflict of jurisdiction and the interference of one officer with the prior custodianship of another, then, on the maxim, *cessante ratione legis, cessat ipsa lex,* I can see no reason for the operation or recognition of the rule, where the second levy does not produce such conflict or interference. For it must be borne in mind that the other requirement of the law, that the levying of an attachment is an actual seizure of the property, is satisfied in the case of successive levies by the same officer, by a constructive application of the succeeding writ ' to the surplus after satisfying the previous attachment.' Why, then, was not the act of the sheriff in the case now under consideration, in taking the invoice of the goods in connection with the constable, ' available to hold the surplus after satisfying the previous attachment,' made by the constable ? The constable had the requisite notice. It in nowise interfered with the prior custody. It produced no conflict, and would lead to no confusion."

. Upon this reasoning it is contended, on behalf of the plaintiff in error, that he was entitled to the benefit of § 1942 of the Revised Statutes of 1870 of Louisiana, which provides that : " Whenever a conflict of privileges arises between creditors, all the suits and claims shall be transferred to the court by whose mandate the property was first seized, either on mesne process or on execution, and the said court, shall proceed to class the privileges and mortgages according to their rank and privilege, in a summary manner, after notifying the parties interested."

There are difficulties in the literal application of such a statutory provision, intended, of course, to regulate the practice between themselves of coördinate state courts, to cases of conflicting rights arising between suitors in the federal and state courts where the systems are independent. It is impossible to transfer suits pending in the state courts into the Circuit Courts of the United States, except as provided by

act of Congress for the removal of such causes. Nevertheless, the substance of the provision may be applied to the practice of the courts in attachment proceedings in such a way as to promote and secure that comity which ought to prevail between federal and state tribunals exercising concurrent jurisdiction, and to administer justice in a conflict of rights growing out of their independent action. Where, under a writ of attachment, the marshal of the United States has first seized property and taken it into custody, the exclusive jurisdiction of the Circuit Court is established over it and over all questions concerning it; but it ought not to follow that the property is thereby withdrawn from the assertion and enforcement of claims against it by those who must necessarily pursue their remedy in the first instance in a state court. A creditor residing in the same State with the defendant and, therefore, required to institute proceedings in the state tribunal, ought to be enabled, by his writ of attachment, to subject the property of the debtor in due course, and according to the order of priority, even though when the sheriff proceeds to execute the writ he finds that property in the possession of the marshal of the United States, and, therefore, subject to the jurisdiction of the federal court. In that case no rule of law or of convenience is violated if he is permitted, by service of notice upon the marshal, to make a constructive levy upon the property, subject to all prior liens, and without disturbing the marshal's possession. This, of course, would not have the effect of subjecting the marshal personally or officially to answer as garnishee to the state court as custodian of the property for the purposes of its jurisdiction, but would entitle the a'  ching creditor in the state court to acquire a right in the property and to appear in the proceeding in the Circuit Court to enforce it on a motion to distribute the proceeds of the sale of the attached property in its custody. This is the recognized practice in those States where successive attachments are authorized to be served by the same officer, acting as the executive of different courts, or by different officers each acting independently of the other. There seems to be no reason why a similar practice should not be adopted

as between federal and state tribunals acting concurrently in the administration of the same laws. Indeed, every consideration of justice and convenience might be adduced to support it. And such a practice in the courts of the United States, when authorized by law in the administration of attachment proceedings as between state courts, seems to us to be justified as a reasonable implication from § 915 of the Revised Statutes. That section expressly secures to plaintiffs in common law causes in circuit and district courts of the United States similar remedies by attachment against the property of the defendant to those provided by laws of the State in which such court is held for the courts thereof, and authorizes the courts of the United States, by general rules, to adopt from time to time such state laws as may be in force in the States where they are held in relation to the same subject. The remedies here spoken of, of course, are to be understood as they are defined in the state laws, and subject to the same conditions and limitations. The authority thus conferred is ample to authorize and sanction the practice of permitting the constructive levy by attaching creditors under state process upon the property in possession of the marshal and their intervention in proceedings in the Circuit Court of the United States for the same district where, as between state courts of concurrent jurisdiction, a similar method of acquiring and adjusting conflicting rights is prescribed.

Under such a practice, if in the present case the marshal had acquired and held possession of the attached goods, by virtue of a valid writ first levied, the plaintiff in error, by making his constructive levy, subject to the prior right and possession of the marshal, by giving him the appropriate notice of his claim to hold him as a garnishee in possession of the property for his benefit as to any surplus that might remain after payment of prior claims, would have thereby acquired the right, after establishing his claim by judgment in the state court and presenting proper proof thereof, to appear in the Circuit Court as an intervenor and secure his right to share in the proceeds of the sale of the attached property in his proper order.

But the case, as actually presented upon the circumstances disclosed in this record, is much stronger for such an intervention. When the sheriff of the Civil District Court undertook to levy upon the goods in question, and served the marshal with notice as garnishee holding actual possession of the property, the latter was in fact, as we have already seen, in possession illegally under a writ, which protected his official possession only so far as to prevent the property from being forcibly withdrawn from the jurisdiction of the Circuit Court by judicial process, that court having acquired jurisdiction, by virtue of the seizure under color of its authority, to decide all questions concerning it. That writ, though illegally issued and levied, was not void on its face. In a certain sense, therefore, the property was *in custodia legis*, and not subject to a levy under process which would have the effect of taking it out of his possession and control. But when, in the exercise of jurisdiction by the Circuit Court in the determination of the question raised by the petition of intervention, the nature of the marshal's title and possession came to be inquired into, it was made apparent that he held the property illegally as a trespasser, and in that forum could be treated as holding it in a private and not an official capacity. It was subject, therefore, in the view of that court, to the consequences of the notice served upon the marshal as garnishee. It was held by the marshal as if it had been a surplus arising from the sale of the property of a defendant on execution, which, as is well established, may be attached in his hands. Drake on Attachment, § 251.

The case, therefore, stands thus: For the reasons growing out of the peculiar relation between Federal and state courts exercising coördinate jurisdiction over the same territory, the Circuit Court acquired the exclusive jurisdiction to dispose of the property brought into its custody under color of its authority, although by illegal means, and to decide all questions of conflicting right thereto ; the plaintiff in error having pursued his remedy by action against his debtor in the state court, to which alone by reason of citizenship he could resort, attempted the levy of his writ of attachment upon the goods in the pos-

session of the marshal; not being allowed to withdraw from the marshal the actual possession of the property sought to be attached, he served upon the marshal notice of his writ as garnishee; not being able by this process to subject the marshal to answer personally to the state court, he made himself a party to the proceedings in the Circuit Court by its leave, and proceeded in that tribunal against its officer and the creditors for whom he had acted; on a regular trial it appeared as a fact that at the time of the notice the marshal was in possession of the property wrongfully as an officer, and therefore chargeable as an individual. It was competent for the Circuit Court, and having the power it was its duty, to hold the marshal liable as garnishee, and having in its custody the fund arising from the sale of the property, and all the parties interested in it before it, that court was bound to do complete justice between all the parties on the footing of these rights, and give to the plaintiff in error the priority over all other creditors; to which, by virtue of his proceedings, and as prayed for in his petition of intervention, he was entitled.

*On these grounds, the judgment of the Circuit Court is reversed, and the cause remanded with directions, upon the facts found in the Circuit Court, to award judgment in favor of the intervenor, Gumbel, in conformity with this opinion.*