**FRED T. LEY & CO., Inc., v. WHEAT et al.**
**No. 6667.**

Circuit Court of Appeals, Fifth Circuit.
April 5, 1933.

Rehearing Denied April 29, 1933.

Joseph F. McPherson and E. S. Quick, both of Miami, Fla., and George C. Bedell, of Jacksonville, Fla., for appellant.

C. D. Blackwell, J. Field Wardlaw, and Joe Hatfield, all of West Palm Beach, Fla., E. T. McIlvaine, and John C. Cooper, Jr., both of Jacksonville, Fla., Frank D. Upchurch, of St. Augustine, Fla., and Dan MacDougald, of Atlanta, Ga., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from a decree of the District Court ordering foreclosure of a bond mortgage upon and sale of an office building in West Palm Beach, Fla., and giving priority to the mortgage over a builder's lien claimed by appellant, Ley & Co., Inc. The claims of error are: First, that the federal court violated comity, in that, before the bill was filed, there was pending in a state court a bill between the same parties to foreclose the same builder's lien on the same property; and, second, that appellant's lien is superior to the mortgage.

On August 19, 1926, Ley & Co., Inc., filed in the state court their bill to foreclose their lien for constructing the building, and made the trustee in the mortgage, Adair, a party together with others as having an interest therein. The bill prayed an accounting, the foreclosure of the lien, sale of the property, and a bar of all right and title of the defendants. No receiver or injunction was asked. The trustee answered, denying much of the bill and setting up his mortgage and asserting its priority, but did not ask any foreclosure or other relief. The mortgage was not then in default. The cause was at issue July 4, 1927, when the appellee Wheat, as a successor trustee, was substituted for Adair. Thereafter, on August 18, 1927, Wheat, trustee, filed the present bill in the federal court to foreclose his mortgage, and made Ley & Co., Inc., and others parties. The prayers were for a foreclosure and a receiver, and that all defendants be required to establish their claims on the property. On August 25th insolvency of the owner of the property was alleged, and on August 26th a receiver was appointed and later took charge. The

order of appointment referred to the case pending in the state court, and provided that, if the state court adjudicated the lien of Ley & Co., Inc., to be superior before the federal court reached a decree, the receiver's possession should be subject to the rights of Ley & Co., Inc., thus adjudicated. Several lien claimants intervened in the federal court. Ley & Co., Inc., moved to dismiss the bill, but with no reference to the state proceedings. Their answer, filed June 25, 1928, set up their lien fully, and affirmatively prayed that the court decree it to be superior to the right and title of every other party, and that it grant such other and further relief as in equity and good conscience was meet. They also set up the pendency of the state case and prayed a stay of the federal case. On April 10, 1929, the prayer for a stay was overruled on the ground that, although the state case had been pending nearly three years, it had not been diligently prosecuted, and, moreover, did not cover all that was involved in the federal case. On May 19, 1930, a master was appointed, who began to take evidence on July 8, 1930. His report was filed August 17, 1931, and the final decree signed February 2, 1932. Since July 4, 1927, no step has been taken in or by the state court. The cause pending in it was one to foreclose a lien on specific property which would have to be controlled by the state court to effect a sale and to deliver possession to the purchaser. On recognized principles of comity, a federal court would not interfere with the full exercise of the state court's prior jurisdiction. The latter, however, would need the property only when and if it rendered judgment in favor of Ley & Co., Inc. It had not by receivership or other actual seizure so taken the property into its possession for administration as to draw to it all claims to or contests over it. Compare Gumbel v. Pitkin, 124 U. S. 131, 8 S. Ct. 379, 31 L. Ed. 374.

The mortgage trustee, although impleaded in the cause, had not been ordered to set up his mortgage therein, nor had he asked foreclosure. Being entitled to federal jurisdiction, he sought it to establish the amount of his debt and validity of his mortgage, and to obtain a decree of foreclosure. This much he could do, thereafter taking his decree to the state court for recognition in distribution, if the state court had been in full charge of the property for administration. Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Waterman v. Canal Bank, 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867. The mortgage also gave a lien

on the income from the building, and on foreclosure a contract right to a receivership. No receivership existing in the state court, but the owner being still in possession, this part of the security could also be enforced in the federal court with due recognition of the subordination of the receiver's possession to the proceeding in the state court. Had the state court gone forward with its case, its prior right to sell must have been recognized. But by no officer and in no way has the state court itself at any time made any request of the federal court in the premises. Its suitor waited ten months to move for a stay, but at the same time asked affirmative relief of the federal court. He let his motion in the federal court slumber a year longer, when it was overruled partly because of the inactivity in the state court. Even then nothing was done in the state court for the two years before the federal decree. The justice of the federal court may not be indefinitely delayed. A receivership when long submitted to acquires rights even when in the beginning it was without right. Harkin v. Brundage, 276 U. S. at pages 52, 58, 48 S. Ct. 268, 72 L. Ed. 457. We hold that by acquiescence and long delay the state court's priority of jurisdiction was waived and abandoned, and the federal court was free to administer full relief and sell the property. We do not pass on the further contention that the bill to foreclose the mortgage was so different from that to foreclose the lien that, since there had been no seizure of the res under the latter, the former might from the first have proceeded independently. Harkin v. Brundage, 276 U. S. 37, 48 S. Ct. 268, 72 L. Ed. 457; Empire Trust Co. v. Brooks (C. C. A.) 232 F. 641.

But the lien of Ley & Co., Inc., ought to have priority. The bond mortgage is a deed to Forrest Adair as trustee from Comeau, who owned in fee one lot covered by it and a long term lease on the other, joined in by Mrs. Stowers to bind her reversion in the second lot. It was of no effect until delivery. Its preparation, the several signings, and the stamping, were but its conception—. it was quickened into life only at delivery. Edwards v. Thom, 25 Fla. at page 254, 5 So. 707; 8 R. C. L., Deeds, § 45. Delivery of a deed is the grantor's surrender of control over it to the grantee, or to some one for him, with intent that it take present effect. The evidence touching delivery is meager. There is no proof of a formal tradition of the deed to Adair. It is dated June 4, 1925. Mrs. Stowers on that date executed it in Colorado before two witnesses, and there acknowledged it. It does not appear that the grantee or

any one for him received it from her, but on June 8th Adair executed and acknowledged it at Atlanta, Ga. This bound him to its terms, and signified his willingness to accept the trusts. Comeau, the principal grantor, executed it before Robert L. Ernest, Jr., and Ella Weybrecht, who certified that it was signed, sealed, and delivered in their presence, and he acknowledged the execution at West Palm Beach, Fla., before one of them, Robert L. Ernest, Jr., under date June 17, 1925. The deed was recorded in Palm Beach county, Fla., on June 18th. The revenue stamps on it are canceled with Comeau's initials and the figures 6/10/25. It is fairly proven that Comeau was in Atlanta about June 10th, and then signed and delivered to Mr. Irving, of Adair Realty & Trust Company, permanent bonds to take up the temporary ones that had been delivered to them previously and partly sold. Comeau testified that the trust company drew up the mortgage and handed it to him for execution, and finally recorded it. At first he said he thought he delivered it to Mr. Irving in Atlanta at the time he signed the bonds, but later testified more positively that he delivered it to him in the office of Mr. Ernest in West Palm Beach because Mr. Ernest there witnessed his signature and took his acknowledgment the same day. Irving did not testify. We think it beyond doubt that, after Mrs. Stowers signed in Colorado, the trust company caused Adair, trustee, to sign in Atlanta; that Mr. Comeau came there to sign and deliver to the trust company the bonds at about the same time, and then canceled the stamps. If the deed had then been signed and delivered to Adair as a completed instrument, it would have been attested by and acknowledged before Atlanta witnesses as Adair's execution was. Comeau, however, returned with it to West Palm Beach, and there executed it before Florida witnesses, one of whom, Mr. Ernest, took his acknowledgment in the latter's office where it was delivered to Irving for Adair, trustee, on June 17th; and Mr. Irving recorded it June 18th. There is no sufficient evidence, direct or circumstantial, to show a delivery before June 16th.

The lien of Ley & Co., Inc., arose thus. Comeau first arranged with Adair Realty & Trust Company to furnish $578,000 net on $650,000 of his bonds secured by a first mortgage on the finished building, their contract providing that $125,000 in addition would be furnished by another party on second mortgage. Comeau then accepted the bid of Ley & Co., Inc., for the construction of the building, and, on their inquiry how it would be paid for, Comeau showed Ley & Co., Inc., the contract with the trust company. The contract for the secondary financing which was signed by the trust company and Comeau and the second mortgagee stated that the money was to supplement that furnished on the bond mortgage to complete the building, so that the bond mortgage would constitute a valid first lien superior to all other liens on the building, and that Comeau should, in making all payments for labor and materials, take necessary writings to protect against liens therefor and furnish the trust company satisfactory evidence thereof. While the mortgage to Adair was in course of execution, but before its final delivery and record, Ley & Co., Inc., having examined the records and seen that the title to the premises was clear, took possession of them and began work on June 16th, holding possession until they ceased work, after which in due time they recorded their claim of lien and began its foreclosure for the balance due. By Comp. Gen. Laws of Fla., §§ 5349, 5350, and 5353, Ley & Co., Inc., had for their labor and materials a lien upon the building and the land on which it stood prior to all others accruing thereafter. By section 5380 all persons whose interest, lien, or claim arises while the construction is in progress are to be held as having notice of the lien. As a matter of law, therefore, when Adair, trustee, received final delivery of his mortgage, he took it with constructive notice of and subject to the builder's lien because the builder was then in possession and had begun work. Booker & Co. v. Watson, 96 Fla. 671, 123 So. 837; Guaranty Title & Trust Co. v. Thompson, 93 Fla. 983, 113 So. 117. The builder's lien thus attaching secures all sums due for labor and materials thereafter furnished under the same contract. Palm Beach Bank & Trust Co. v. Lainhart, 84 Fla. 662, 95 So. 122. The innocence of bondholders purchasing negotiable bonds does not add anything to the lien of the mortgage securing them. Booker & Co. v. Watson, supra. The builder's possession is constructive notice to them also. Had the mortgage been in existence when Ley & Co., Inc., began work, they could then have refused to lay out their material and labor until assured against it. The mortgage not having been delivered, it had no effect, though the builder knew it was about to be made. Adair Realty & Trust Company, finding the builder in possession with a builder's lien fixed, could on its part have refused to go forward, the mortgage not being a first lien as agreed; but the contract

for the secondary financing shows that in truth the existence of prior liens for labor and material was contemplated and reliance put on Comeau's using the proceeds of the two mortgages to clear off such liens and make the bond mortgage become the first lien. The financing contract cannot itself be treated as an equitable mortgage, for nothing had actually been advanced on it. Iowa Loan & Trust Co. v. Plewe, 202 Iowa, 79, 209 N. W. 399. The builder's lien has the legal priority, and we see nothing to subordinate it in equity or to estop against its assertion. In Hoffman Construction Co. v. Ward, 97 Fla. 530, 121 So. 800, cited as being contrary, the builder and owner first contracted and the work must have been begun when the builder and the owner together procured a mortgagee of the building to lend money to be paid to the builder. The builder's activity in procuring the mortgage which he knew was thought to be a first lien estopped him from denying that it was. Similarly in Hoffman v. Wheat (C. C. A.) 37 F.(2d) 93, the builder owned the lot, sold it to others who employed him to erect the building, and at the same time they joined in an arrangement to get part of the construction money on a first mortgage of the building; it being agreed that the builder would have to look elsewhere for the remainder. It was held that, although the builder's lien in law came first, his agreement to accept the proceeds of the mortgage and look elsewhere for the remainder was a waiver of his lien as against the mortgagee. Union Terminal Co. v. Turner Const. Co. (C. C. A.) 247 F. 727, 11 A. L. R. 880, appears as reported to involve no direct contract between the mortgagee and the builder, but the record in the case discloses that the builder agreed with the mortgagee that $205,000 to be advanced on the mortgage and paid to him would complete the building, and he was required as each installment was paid to give the mortgagee in writing renewed assurance on that point. He was held entitled to get the balance of the $205,000 agreed to be advanced, but to have subordinated his lien to the mortgage thereafter. In the present case the trust company and Comeau were the moving spirits. The builder had no contract and no contact with the mortgagee, nor any part in inducing the advances. The money was promised to Comeau, and was all paid to him. All there is against Ley & Company, Inc., is the fact that they knew the money for the building was to be raised on two mortgages, a first and a second, and that the first lender was performing his agreement. As money was offered them by Comeau to pay for what they had furnished under their lien, they were not asked to waive their lien in favor of the mortgage, nor did they do so by accepting the money. They in fact got only about $325,000 of it. They were not party to any agreement by which they could compel either mortgagee to pay the promised sum, nor when it was paid over to Comeau could they compel that money to be turned over to them. They could only rely on their lien. The lenders were relying on Comeau's promise to apply the money in discharge of the liens. It was the failure of the second mortgagee to meet his engagements that caused the trouble, but that failure cannot be visited on the builder who was no party to the broken promise. It may be that in the sale of the bonds representations were made to the public that they were secured by a first mortgage, but the builder is not shown to have made them, or to have been in position to deny them as made. We see nothing to prevent assertion of the lien which the law gives. Its foreclosure was timely begun in the state court. The taking of jurisdiction over it by the federal court ought not to prejudice it. A court of equity gave priority over a mortgage to such a lien timely foreclosed in another court in Hub Supply Co. v. Dunedin Real Estate Co., 100 Fla. 471, 129 So. 904.

Mrs. Stowers contends she has never been so impleaded as to bring in issue her rights as against the builder's lien. No assignment of error raises any question relating peculiarly to her. We leave all such open. Defects of pleading can yet be remedied by amendment.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.