LEROY C. GRIFFITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffith v. Commissioner
Docket Nos. 22089-80; 4032-85.
United States Tax Court
T.C. Memo 1988-123; 1988 Tax Ct. Memo LEXIS 151; 55 T.C.M. (CCH) 439; T.C.M. (RIA) 88123; March 21, 1988. *151 During the trial allegations of misconduct and violations of Court orders were made against R's counsel and R's revenue agent. P moved for a dismissal against R, or in the alternative, a dismissal of R's affirmative allegations. Held: The behavior of R's revenue agent demonstrated bias which warrants disregarding his testimony except to the extent it is relied upon by P. The testimony of a witness not disclosed prior to trial is stricken. Other requested relief is denied. Theodore Brill and William H. Karo, for the petitioner. Sharon Armuelles and Andrew Vanore, III,[1] for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: This case is before us not to rule on petitioner's motion at trial to find respondent in default and dismiss the case against respondent or, in the alternative, to dismiss respondent's affirmative allegations based upon respondent's alleged violation of two of the Courts' orders and alleged ethical misconduct of respondent's counsel in violation of Rule 201. [2] We also consider on our own motion whether to strike the testimony of certain witnesses *152 respondent failed to list in advance as required. The first of these cases was filed in 1980, and one or both have been calendared and continued numerous times. They involve a very large number of issues, of which many are complex. There are adjustments to ten different corporations, just one of which, for example, has 35 categories of adjustments. The cases also involve issues of statutes of limitations, fraud, and transferee liability. Cooperation between opposing counsel in preparing a complete stipulation of facts was vitally essential to the orderly presentation of the cases. Despite the Court's admonition, the parties were not ready on March 4, 1986, when the cases were first called for trial. No stipulation of facts was prepared. The Court then continued the case on its own motion, keeping the outstanding subpoenas in full force. The rescheduled trial was held on June 5 through June 11, 1986. Despite all our prior warnings, and the additional time to prepare, no stipulation *153 of facts was ready when the trial began. The first stipulation was not filed until June 9, the third day of trial. Supplemental stipulations were filed June 10 and June 11. Needless to say, preparation of this case by both parties was not a model of cooperation and effectiveness. At trial, petitioner requested the Court to invoke Rule 145, to exclude witnesses. Petitioner, Mr. Silverman (an accountant employed to help petitioner during the trial), and Mr. Crane, the examining agent for respondent, were permitted to remain in the courtroom. Otherwise, all fact witnesses were excluded. Respondent proceeded with his case. When respondent called Ms. Euchman, his fifth witness to testify, petitioner objected that she and three of the previous four witnesses were not listed on respondent's trial memorandum. Counsel for respondent stated that she listed these witnesses in a letter allegedly sent to petitioner and the Court one week before trial. The letter actually was dated only two days before trial. Ms. Euchman, however, was neither listed as a witness in respondent's trial memorandum nor in respondent's supplemental letter. We asked respondent's counsel whether she had failed *154 to list any other witnesses either in the trial memorandum or the supplemental letter. She said no. Respondent's counsel claimed she discussed Ms. Euchman with petitioner at a stipulation conference and was unaware that petitioner would object to Ms. Euchman's testimony. Petitioner's counsel, Mr. Brill, was unable to confirm whether in fact Ms. Euchman was discussed, but he had no recollection of ever hearing her name. The Court allowed Ms. Euchman to testify despite our reservations as to the fairness of hearing her testimony. Respondent then called Ethyl Salzman as a witness. Ethyl Salzman was not listed as a witness on respondent's trial memorandum or in his supplemental letter, a direct contradiction to respondent's counsel's representation that there were no other "surprise" witnesses. Still, because petitioner was aware that Ms. Salzman was under subpoena and did not object to her testifying at that time, we allowed her to testify. On the third day of trial petitioner brought a possible violation of Rule 145, the "Rule on Witnesses," to the Court's attention. Petitioner's counsel alleged that at a recess on the first day of trial, respondent's Agent Crane had approached *155 Mr. Reisenberg, petitioner's accountant, and, in the presence of respondent's counsel, [3] had asked Reisenberg whether petitioner had sued him (Reisenberg) for malpractice yet. Agent Crane told Reisenberg, "They are blaming a lot on you." Under oath, both Reisenberg and Agent Crane confirmed that the conversation took place as alleged. At the time Agent Crane approached Reisenberg, Reisenberg had not yet taken the stand. However, when the exchange came to the Court's attention, Reisenberg had already completed his testimony. Although Reisenberg confirmed the exchange, he stated that his testimony was not affected in any way by Agent Crane's remarks. When asked about the exchange, Agent Crane testified that he had asked about the malpractice lawsuit because he was "inquisitive." He acknowledged that he understood he was not to discuss the testimony of any witness with any other witnesses, but said he did not believe he had violated Rule 145 since no witness had, in fact, blamed Reisenberg in their testimony. Respondent's counsel inconsistently *156 explained the incident. She first stated, in response to allegations by petitioner's counsel, that to the best of her knowledge the incident never occurred. She then stated she remembered "something rather casual in jest being said between the parties, but certainly nothing threatening." After Reisenberg confirmed the incident, respondent's counsel stated that she knew what had transpired and perhaps she should take the stand. However, she did not do so. After Agent Crane testified, further confirming the incident, respondent's counsel then stated "for the record" that she did not even remember the comment. After Agent Crane admitted that he did not frequently jest or "verbally spar" with Mr. Reisenberg, respondent's counsel said she misunderstood the comment. During this exchange questions were also raised as to respondent's counsel's trial methods, her manner of questioning witnesses before trial, her calling surprise witnesses and her connection with the strike force attorney involved in the sentencing of one of petitioner's witnesses on pornography charges. [4] Both parties were allowed to argue the merits, or the lack thereof, of the allegations. *157 Respondent's counsel denied she had any involvement in the sentencing of petitioner's witness and argued that any remarks made by the prosecutor which may have affected the witness' willingness to testify were beyond her control. Respondent's counsel also asserted that her manner of interviewing witnesses was permissible. She stated she limited her questioning of witnesses to issues directly involved in the case, that any accusations of witnesses were made by others; and that she was merely trying to confirm statements or representations made to her. Moreover, counsel claimed that petitioner was not unfairly prejudiced by her calling previously undisclosed witnesses and that she could have called Ms. Salzman as a rebuttal witness and then would not have even been obliged to disclose her name at all. Finally, respondent argued that Reisenberg's testimony was not affected by Agent Crane's remarks and therefore, even if inappropriate, the remarks were harmless. Petitioner contended that the actions described above indicate the possibility of a pattern of intimidation which prevents petitioner from receiving a fair trial. Moreover, petitioner argued that the Court should impose *158 sanctions to prevent future misconduct even if it finds respondent's conduct did not harm petitioner. Petitioner argued that the Court should hold respondent in default and dismiss the case against respondent or, in the alternative, that the Court should strike all of respondent's affirmative allegations. After hearing Reisenberg and Agent Crane, and arguments of counsel, we found that Reisenberg did not testify any differently because of Agent Crane's comments. We took petitioner's motions to dismiss under advisement. The Court also took under advisement on its own motion whether to strike Ms. Euchman's testimony in the interest of justice. We stated further: The Court was extremely perturbed to find that we had three surprise witnesses in this case, who were not listed by the respondent on the pre-trial memos, and there was an additional list that was supplied the day after calendar call with five other witnesses, even though the Court's order clearly stated that these names were to be submitted to the other side twenty days ahead of time. It is absolutely true that Mr. Brill had no chance to talk to any of these people, which at the time Ms. Euchman was called and some *159 of the others were called, the Court said on the record we thought it was unfair. * * * I don't feel convinced, that to this date the Petitioner has been deprived of a fair trial. So I am going to take your motion under -- I am not going to grant it at this point, but I am going to take it under advisement, pending the way the testimony goes and what else comes out in the trial. In addition, the Court permitted petitioner to contact all those witnesses who had previously testified to see if they had been intimidated in any way, and respondent was precluded from giving the witnesses prior notice. Petitioner did not come forward with any additional charges of intimidation or misconduct after having the opportunity to question witnesses without interference from respondent's counsel or respondent's examining agent. Therefore, we cannot find that respondent's counsel intimidated witnesses or otherwise acted improperly before trial. However, we do consider the effect of respondent's failure to provide the names of witnesses to petitioner and the Court as required. OPINION As a preliminary matter we would like to state our disappointment and disapproval of the actions *160 of respondent's examining agent during trial. Contrary to respondent's contention that this is a spurious issue, we find this matter to be very serious. This Court has the inherent power to protect our own process from abuse, oppression and injustice. This power is as extensive as may be required for its exercise. Gumbel v. Pitkin,124 U.S. 131, 145-146 (1888). See also Eash v. Riggins Trucking Inc.,757 F2d 557 (3d Cir. 1985) (en banc). Our Rules are consistent with this power. Rule 123(b) provides: (b) Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against petitioner. The Court may, for similar reasons, decide against any party any issue to which he has the burden of proof; and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule. [Emphasis added.]
Thus our authority in this area is both broad and discretionary. The ultimate sanction of dismissal is inappropriate when a lesser sanction will serve *161 the purpose. See generally Societe International v. Rogers,357 U.S. 197 (1958). In this case petitioner has made several allegations of misconduct by respondent. We will address each of these allegations separately. Unlisted Witnesses
When this case was originally scheduled for trial before Judge Goffe, he required the parties to exchange trial memoranda with witness lists by February 24, 1986. Petitioner filed a trial memorandum and witness list on February 24. Respondent's trial memorandum was filed and served March 4, 1986. Respondent's memorandum listed 13 witnesses, plug "other witnesses as discovered. (None are anticipated.)" The clear implication of requiring the parties to exchange memoranda and witness lists is to avoid trial by ambush. Nevertheless, at trial three months later respondent called five witnesses who were not listed on his trial memorandum and therefore were not disclosed to petitioner before trial. Petitioner did not call any surprise witnesses. Respondent did, however, disclose additional witnesses in the form of a supplemental letter dated two days before trial and at a conference before trial. Three of the five *162 witnesses in question were listed in the letter. Two of respondent's witnesses were not disclosed either in the trial memorandum or in the supplemental letter. Petitioner first learned of their scheduled testimony at the moment they were called to testify. At this point we must decide what remedy, if any, is appropriate for respondent's violation of the Courts' directive. At trial petitioner did not object to the testimony of the three witnesses who were listed in the supplemental letter; therefore we find that he was not prejudiced and there is no need for a remedy. Ms. Salzman, one undisclosed witness, was a full-time employee of petitioner at the time of trial. Petitioner was not informed that Ms. Salzman would actually be testifying for respondent, but he knew she had been subpoenaed. At trial respondent claimed that Ms. Salzman could be called as a rebuttal witness which would not have required disclosure of her identity. Respondent's right to call Ms. Salzman as a rebuttal witness does not translate into a right to call her during his case-in-chief. We find, however, that respondent's calling Ms. Salzman did not surprise or prejudice petitioner. When confronted with *163 the prospect of respondent's calling Ms. Salzman as a rebuttal witness, petitioner stated that he preferred she be called on the day she was there instead of being recalled at a later date. Thus, we do not find it necessary to remedy this particular violation by respondent. The testimony of Ms. Euchman is an entirely different matter. Mr. Brill, petitioner's counsel, stated that he did not remember ever having heard Ms. Euchman's name prior to the time she was called to testify. Respondent claims that her name and her testimony were discussed at a pre-trial stipulation conference. We find that respondent violated the Court's directive requiring disclosure of all witnesses' names and that petitioner was unfairly surprised and was given no time to prepare for an examination of this witness. To prevent injustice, therefore, we will strike the testimony of Ms. Euchman. See Gumbel v. Pitkin,124 U.S. 131, 145-146 (1888). Rule on Witnesses
Petitioner next alleges that the actions of respondent's examining agent constitute a violation of the Court's order imposing the Rule on Witnesses and therefore warrants sanctions being imposed upon respondent. As a *164 preliminary matter we must decide whether in fact the actions of respondent's examining agent constituted a violation of the Rule. Rule 145 provides: Rule 145. Exclusion of Proposed Witnesses (a) Exclusion: At the request of a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This Rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause. The report of the Senate Judiciary Committee [5] discussing Rule 615 of the Federal Rules of Evidence, the rule upon which Rule 145 is based, makes it clear that an investigative agent of the Government falls within the second enumerated exception to those witnesses who cannot be excluded from the trial. There are two purposes underlying the Rule on Witnesses: to prevent falsification and to detect fabrication which has already taken place. United States v. Warren,578 F.2d 1058, 1076 (5th Cir. 1978), *165 cert. denied 446 U.S. 956 (1980). Thus it seems, the Rule was designed to prevent collusive efforts by either party to present consistent testimony. Noting the underlying rationale of the Rule, it would seem unnecessary to prohibit communications between witnesses aligned with opposing parties. Those communications would not seem to present the same threat of collusion or conspiracy. The Rule, however, does not delineate which witnesses may discuss testimony and which witnesses may not. Therefore, the mere fact that in this case the communication took place between respondent's examining agent and petitioner's accountant would not necessarily preclude a finding that the Rule was violated. Upon close examination of the testimony at trial and the circumstances surrounding the communication, we believe that there was no violation of the Rule on Witnesses. Mr. Reisenberg testified that Agent Crane approached him outside the courtroom during a break on the first day of trial. Agent Crane asked Reisenberg whether petitioner had sued him for malpractice. He also testified that Agent Crane stated something to the effect that, "They are blaming a lot on you." While petitioner's *166 counsel represented that Agent Crane's statement specifically indicated this "blame" was occurring in the courtroom, at no time did Reisenberg actually state that. He never said that Agent Crane indicated a particular person had so testified in the courtroom, nor did he state that he believed Agent Crane was referring to testimony which had actually taken place. Agent Crane stated that he did no believe he had disclosed any testimony that had occurred in the trial. In fact, respondent argued at trial that statements made by Agent Crane were supported by the pleadings and were not indicative of what had transpired at trial. Finally, we note that respondent was putting on his case for fraud before petitioner went forward with his case on the deficiencies. Reisenberg should have known this since he was still closely aligned with petitioner as his accountant at the time of trial, he was under subpoena by respondent and knew he was to be one of the next few witnesses. Since Reisenberg knew that petitioner's witnesses had not yet testified, it is likely that Reisenberg also would have realized that respondent's case for fraud was not built on testimony "blaming a lot on him. *167 " While Agent Crane's statements may not have disclosed testimony in the courtroom, we would not necessarily find that to be a fatal flaw to a claim that the Rule on Witnesses had been violated. A reasonable person who was a party to this conversation might have assumed that Agent Crane was referring to a particular witness in the courtroom. However, at trial we found as a fact that Reisenberg had not altered his testimony in any was based on Agent Crane's statements. Furthermore, we are not convinced that Reisenberg assumed Agent Crane's remarks were based upon any witnesses' testimony. Thus, we conclude that no sanctions under Rule 145 are warranted. While we find that no sanctions are warranted under Rule 145, that is not to say that respondent's actions are acceptable to this Court. The statements by Agent Crane were totally inappropriate. After carefully reviewing these events, we believe Agent Crane intended to cause Reisenberg to turn against petitioner. Nevertheless, we believe petitioner received a fair trial. On the other hand, we think Agent Crane's overzealous behavior reveals a personal bias against petitioner sufficient to cause us to disregard his testimony, *168 except insofar as it may be relied on by petitioner to prove some element of his own case. Violation of Rule 201
Finally, petitioner asserts that respondent's counsel violated Rule 210 which required practitioners before this Court to carry on their practice in accordance with the letter and the spirit of the Rules of Professional Conduct of the American Bar Association. Although petitioner alleged that respondent's counsel behaved unethically, he offered no evidence of misconduct beyond that already stated. If such a violation occurred, the appropriate course of action is to refer the attorney to this Court's Committee on Admissions and Discipline. See Rule 202(a). An appropriate order will be issued.
Footnotes
1. Mr. Vanore was on brief only. ↩
2. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the applicable year of the Internal Revenue Code. ↩
3. Ms. Armuelles was apparently going through exhibits when Agent Crane approached Reisenberg. She did not intervene or react. ↩
4. When this case was scheduled for trial on March 4, the witness, Norman Arno, was in Miami, Fla., to be sentenced on pornography charges. As an accommodation, Arno was scheduled to be taken out of turn. Arno had agreed to testify for petitioner while he was in town. Petitioner claims that Arno would have been able to substantiate numerous film purchase expenses. Two days before Arno was to testify respondent's counsel learned that Arno was to be sentenced the next day on pornography charges. The strike force prosecutor gave counsel information regarding Arno's background in regards to his involvement as a pornography distributor. Counsel disclosed to the prosecutor that Arno was a witness for petitioner. Arno, an older man, was facing an extremely long sentence. Petitioner claims that the government threatened to argue at sentencing that if Arno was well enough to testify, he was well enough to tolerate a long confinement. Arno then denied having agreed to testify for petitioner, and claimed loss of memory. Petitioner did not ask the Court to enforce a subpoena against Arno, nor did he substantiate his allegation that Arno was threatened. ↩
5. S. Rept. No. 93-1277 at 26 (1974). ↩