UNIVERSAL MANUFACTURING CO., INC. AND SUBSIDIARIES, SUCCESSOR BY MERGER OF WNC CORP., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DELBERT W. COLEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 22791-88, 31761-88.     Filed November 14, 1989.

*Stephen D. Gardner, Henry G. Zapruder, Roger A. Pies,* and *David J. Fischer,* for the petitioners.
*James F. Kidd* and *Robert A. Bedore,* for the respondent.

### OPINION

WHALEN, *Judge:* On February 13, 1989, petitioner in each of the above cases filed motion for protective order, and respondent filed his notice of objection to each motion on March 8, 1989. The Court heard argument on the motions on March 14, 1989, in New York, New York. Shortly thereafter, the parties asked the Court to refrain from further consideration of the motions until they had an additional opportunity to resolve their differences infor- mally. During a conference call on September 15, 1989, the parties advised the Court that they had been unsuccessful, and they now ask the Court to decide the subject motions for a protective order.

Respondent issued a notice of deficiency to WNC Corp. and Subsidiaries on June 7, 1988, in which he determined

deficiencies in income tax and accumulated earnings tax as follows:

| TYE Sept. 30— | Income tax deficiency | Accumulated earnings tax |
|---|---|---|
| 1984 | $2,617,076 | $2,113,056 |
| 1985 | 269,775 | - - - |
| 1986 | 4,670,398 | 3,526,247 |

Petitioner Universal Manufacturing Co., Inc., is the successor to WNC Corp. by merger. In its petition, filed September 2, 1988, it asked for redetermination of the deficiencies for its taxable years ending September 30, 1984, and September 30, 1986; it did not ask for redetermination of the deficiency for its taxable year ending September 30, 1985. The principal contention made by Universal Manufacturing Co., Inc., in its petition is that respondent erred in determining that net operating loss deductions for its taxable years ending September 30, 1984, and September 30, 1986, are not allowable due to the requirements of sections 172 and 269 of the Internal Revenue Code. (All section references are to the Internal Revenue Code, as amended, unless stated otherwise.)

Respondent issued a notice of deficiency to Mr. Delbert W. Coleman on September 19, 1988, in which he determined deficiencies in income tax as follows:

| Taxable year | Income tax deficiency |
|---|---|
| 12/31/83 | $4,130,764 |
| 12/31/84 | 3,060,374 |
| 12/31/85 | 2,134,470 |

Mr. Coleman was the majority shareholder of WNC Corp. He asked for redetermination of the above deficiencies in a petition filed on December 12, 1988. The principal contention made in his petition is that respondent erred in treating certain moneys as dividends from WNC Corp. and its subsidiaries, rather than as loans or shareholder advances.

On or about January 10, 1989, after the subject cases were docketed in this Court, a special agent of respondent's Criminal Investigation Division served summonses on two employees of WNC Corp. and third-party record-keeper

summonses upon two accountants for WNC Corp. All of the summonses specify the following documents to be produced:

Original or true copies relating to DELBERT W. COLEMAN and WNC CORPORATION and its subsidiaries tax liabilities for the period October 1, 1982 through September 30, 1987. These records should include but not be limited to:

1. Workpapers, ledgers, journal and computer printouts.

2. Corporate Minute Book.

3. Documents detailing loans and shareholder advances made to Coleman.

4. Documents detailing loans made to WNC Corporation and its subsidiaries by COLEMAN.

5. Documents detailing the purchases of the following corporations by COLEMAN and/or WNC CORPORATION and its subsidiaries: A. KARNA CORPORATION, B. RADON MANUFACTURING CORPORATION (THERM AIR MANUFACTURING), C. SHELTER RESOURCES, D. WINSTON INDUSTRIES, E. LANCER HOMES.

6. Documents relating to any financial interest COLEMAN or any entity which he is associated with has in any foreign company[.]

7. DISC tax returns prepared for COLEMAN or any entity controlled by him. * * *

8. Documents detailing loan or shareholder repayments made by COLEMAN to WNC CORPORATION and its subsidiaries.

9. Loan schedule detailing loans and shareholder repayments made by COLEMAN to WNC CORPORATION and its subsidiaries.

10. Names of employees and corresponding social security numbers assigned to work on COLEMAN'S and/or WNC CORPORATION and its subsidiaries accounts.

11. List of professional fees billed to COLEMAN or any entity controlled by him.

12. Workpaper utilized to reconcile the individual and/or corporate tax return.

13. Correspondence between you or your firm and COLEMAN or WNC and/or financial matters of COLEMAN and/or WNC Corporation relative to your firms [sic] handing of the accounting and/or financial matters of COLEMAN and/or WNC Corporation.

14. Tax accrual workpapers done in connection with the preparation of COLEMAN's and WNC's tax returns.

Upon review of the above specification of documents to be produced, it is clear that the testimony and documents sought by respondent under the summonses are directly related to the matters at issue before this Court in the subject cases. For example, each summons requires production of: "documents detailing loans and shareholder advances made to Coleman" (item 3); "documents detailing loans made to WNC Corporation and its subsidiaries by COLEMAN" (item 4); "documents detailing loan and shareholder repayments made by COLEMAN to WNC CORPORATION and its subsidiaries" (item 8); and "loan schedule detailing loans and shareholder repayments made by COLEMAN to WNC CORPORATION and its subsidiaries" (item 9). Such documents are directly related to respondent's position in the case at docket No. 31761-88 that certain loans and shareholder advances made to Mr. Coleman should be treated as dividends. Similarly, documents dealing with the acquisition of certain corporations by Mr. Coleman or by WNC (item 5) are directly related to respondent's position in the case at docket No. 22791-88 that such acquisitions were made to evade or avoid tax within the meaning of section 269. Respondent does not deny the close relationship between the testimony and documents called for by the summonses and the matters at issue in the subject cases.

Petitioners assert that respondent's use of administrative summonses to obtain information directly related to the issues of cases pending before this Court allows him to circumvent the discovery rules contained in title VII of our Rules of Practice and Procedure and gives him an unfair advantage in the prosecution of litigation before this Court. Petitioners argue that the notices of deficiency issued by respondent on the eve of the expiration of the limitations period may have been issued "without rational foundation" and that information to be obtained by respondent under the summonses may preclude them from having an opportunity to substantiate that argument at trial.

Petitioners urge us to exercise our inherent authority over these proceedings "to prevent respondent from utilizing in this Court any information obtained pursuant to the Sum-

monses." Petitioners do not ask us to limit respondent's use of administrative summonses or to restrict the information to be returned under the subject summonses or under any future summons. Petitioners instead ask for a protective order under Rule 103 of our Rules of Practice and Procedure to restrict respondent's use of the information obtained pursuant to the subject summonses. In effect, they ask us to prohibit respondent's civil attorneys from using in this Court any information which may be obtained pursuant to the summonses.

During oral argument, respondent represented that the summonses were issued in connection with a criminal investigation which is being conducted by his Criminal Investigation Division, independently of his civil attorneys. Respondent argues that, in this situation, he is authorized by section 7602 of the Internal Revenue Code to serve summonses and to freely utilize the information obtained thereby. He notes that jurisdiction to enforce or to quash a summons is given to the United States District Courts and not to this Court. Secs. 7602, 7609. Proceedings to enforce or quash the subject summonses are now pending before three District Courts. In respondent's view, petitioners' motions improperly seek to convert a motion for a protective order under Rule 103 into an action to quash the summonses and should be left to the District Courts.

Respondent further argues that petitioners' complaints to this Court are premature. He argues, on the one hand, that the District Courts may not enforce, or may quash, the subject summonses and put an end to the matter. On the other hand, if the summonses are enforced, respondent argues, petitioners will then have ample opportunity to raise their concerns about the use of information obtained thereunder in either of the subject cases.

At the outset, in evaluating respondent's position that he is entitled to free and unfettered use of information developed through the subject administrative summonses, we note that respondent chose to issue the notices of deficiency at issue in these cases, and in effect chose to give petitioners the opportunity to come to this Court and invoke our Rules before his criminal investigation was completed. Respondent did not choose to rely on the

exception to the period of limitations on assessment and collection for false returns provided in section 6501(c)(1), even though his internal administrative guidelines seem to provide that a notice of deficiency "normally will not be issued" in this situation. Internal Revenue Manual, Audit Vol. II, sec. 4565.6(5) (1984). The Internal Revenue Manual, section 4565.6(5) (1984) provides as follows:

In making the determination of whether a statutory notice should be issued, Management Officials will be guided by the following procedures:

(a) A statutory notice will be issued in all cases where such action is appropriate to protect the assessment of civil liability and it appears unlikely the criminal prosecution will be recommended.

(b) If it appears likely that criminal prosecution will be recommended, a statutory notice normally will not be issued if either of the following situations exist.

1 The facts and circumstances are deemed such as to warrant the assertion of the fraud penalty, provided there is sufficient probative evidence available to sustain the Commissioner's burden of proof in establishing fraud relating to the particular tax period, thus permitting the assessment of the tax at any time.

2 The issuance of the statutory notice would imperil successful criminal investigation or prosecution. In this respect, peril to the criminal aspects of the case may result from inconsistent theories between the civil and criminal cases, the disclosure of the details of evidence of sources thereof, including the identity of particular witnesses, or other factors which reasonably could be expected to lead to the destruction of evidence, efforts by the taxpayer to tamper with or discredit testimony or documentary evidence to be relied upon in support of the potential criminal case.

The subject motions require us to reconcile two competing considerations. First, this Court has no desire to interfere in any way with respondent's investigations into criminal violations of the Internal Revenue laws. Respondent has the obligation to initiate such investigations and to pursue them to completion. Petitioners in this Court should not be immune from such process, lawfully pursued. Second, respondent's use of administrative summonses to interview third-party witnesses and obtain relevant documents concerning the issues in cases pending before this Court circumvents our discovery rules. This is true whether or not respondent intends to do so. Even if respondent's motives are fully proper—and we do not think otherwise in this case—his use of information developed pursuant to a

summons circumvents our discovery rules and gives him an advantage not enjoyed by petitioners. We cannot abdicate our responsibility to supervise the operation of our Rules and the conduct of litigation before this Court.

In our view, petitioners' request that respondent not use any information obtained from the summonses in his prosecution of the cases pending in this Court reasonably and satisfactorily addresses the above competing considerations. In so ordering, we do not interfere in any way with respondent's summons authority or with the District Courts' authority over the enforcement of summonses. At the same time, the integrity of our Rules is preserved: respondent's civil attorneys will be required to pursue their discovery according to the rules prescribed therefor, and they will not have available to them a form of discovery which petitioners do not have.

Our objective is to require respondent to present his position in the civil cases pending before us without utilizing any information obtained pursuant to an administrative summons served after the cases were docketed in this Court. We understand that our order may cause respondent's staff duplication of effort and may be cumbersome in operation. Nevertheless, we believe that such problems are a reasonable price which respondent must pay for having issued the notices of deficiency before completing his criminal investigation.

Finally, we note that petitioners ask the Court to order respondent to maintain an inventory of all testimony, documents or other information contained in his files along with the source of the information and the time he obtained it. We do not intend to require respondent to maintain any such inventory. We rely instead on the integrity of respondent's attorneys to observe the spirit of the order set out below.

After consideration of the foregoing, the Court has issued an order which provides as follows:

respondent's attorneys, agents, and employees engaged in representing him before this Court in the cases at docket Nos. 22791-88 and 31761-88 shall not obtain or use any testimony, documents or other information obtained pursuant to an administrative summons served after September 2, 1988.

We do not intend this opinion or the order which has been issued to preclude respondent from acquiring and using material and information otherwise obtained, such as under this Court's discovery procedures or by requests for admissions.

*The above order has been issued.*