THOMAS O. WOOTEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wooten v. Commissioner
Docket No. 7711-91
United States Tax Court
T.C. Memo 1993-241; 1993 Tax Ct. Memo LEXIS 248; 65 T.C.M. (CCH) 2825; May 27, 1993, Filed; As Corrected May 27, 1993 *248 For petitioner: Benjamin W. Gale and Woodford G. Rowland. For respondent: Stephen R. Asmussen. WOLFE
WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. The case is before us on petitioner's motion to compel answers to interrogatories and respondent's motion for protective order. [1]
By notice of deficiency, respondent determined that petitioner was liable for the following deficiencies and additions to tax for petitioner's 1980, 1981, and 1982 tax years: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 144,563
$ 7,228
1981
126,544
$ 6,327
[1]
1982
78,825
3,941
[1]
*249 A portion of respondent's determination is attributable to the disallowance of claimed losses from petitioner's distributive share in partnerships identified as part of the Computech Research Investors (CRI) tax litigation project. The CRI project was the subject of this Court's decision in Alexander v. Commissioner, T.C. Memo. 1990-141. The Alexander decision, in part, sustained the Commissioner's disallowance of investors' CRI deductions under sections 174 and 165. In Alexander v. Commissioner, 95 T.C. 467 (1990), this Court granted respondent's motion for reconsideration and held that the at-risk rules of section 465 did not apply to the partnerships' activities at issue in that case. Some of the facts have been stipulated and are so found. Petitioner resided in Palo Alto, California, at the time the petition was filed in this case. In his motion to compel answers to interrogatories, petitioner contends that this case involves a pattern of discriminatory treatment by respondent of taxpayers in nondocketed cases concerning investments in CRI and related limited partnerships and that respondent's treatment of *250 petitioner amounts to unconstitutional discrimination. Petitioner contends that a key issue in his case is whether IRS appeals officers offered timely settlements to a substantially higher percentage of taxpayers in docketed cases than in nondocketed cases between 1985 and 1989, and contends that respondent possesses relevant information on these issues. In respondent's motion for a protective order and objection to petitioner's motion to compel answers to interrogatories, respondent argues that petitioner has not demonstrated that the IRS discriminated against him based on race or religion, or prevented petitioner from exercising his constitutional rights. Respondent further contends that petitioner's interrogatories would be unduly burdensome and would not lead to the discovery of admissable evidence because the interrogatories request details of IRS settlement procedures and actions with respect to other taxpayers. Petitioner claimed losses from CRI and related partnerships on his 1980, 1981, and 1982 U.S. Individual Income Tax Returns. In two letters dated July 16, 1984, respondent offered to resolve administratively the issue as to petitioner's returns for 1980, 1981, and *251 1982 by allowing out-of-pocket expenses as deductions in the initial year of investment for CRI and a related partnership. Petitioner declined both of these offers. Petitioner executed Form 872-A, Special Consent To Extend the Time to Assess Tax, for each of the years in issue. On March 31, 1986, petitioner formally requested a settlement conference with the IRS San Jose Appeals Office in his written protest of the adjustments proposed in a report of income tax examination changes issued by respondent's examination division on February 28, 1986, for all of the years in issue. In a letter dated December 4, 1986, Ronald Bond (Bond), an appeals officer in the San Jose Appeals Office, wrote that petitioner's case had been referred to his office and that he would write or call soon to arrange a mutually satisfactory date for a conference or that, alternatively, petitioner's counsel might write or call the appeals officer. Petitioner did not hear from respondent until April 1989, when petitioner's attorney Woodford Rowland was informed that the settlement proposal was no longer available. In the latter part of 1987, Bond was appointed key appeals officer for cases involving CRI. *252 In this capacity, Bond never offered an out-of-pocket cash settlement to any investors. Bond only formulated a settlement position with respect to CRI in 1990 after the case of Alexander v. Commissioner, T.C. Memo. 1990-141, was decided by the Tax Court. Bond did not formulate a settlement prior to this time because he believed that the IRS had a strong case. However, Bond understood that the San Francisco Appeals Office offered out-of-pocket cash settlement on a few CRI cases. Robert Towler (Towler) is a trial attorney employed by the district counsel's office of the IRS. Towler was assigned CRI and related partnerships in approximately 1987, and ultimately tried the actions related to these partnerships. Towler was not aware of any settlement policy or actual settlements regarding CRI or related partnerships prior to the time these cases were assigned to him. Because he believed that the IRS had a strong case, Towler saw no reason to offer any settlements unless the taxpayers conceded the research and development issue. Towler understood that the San Francisco Appeals Office opposed any kind of out-of-pocket settlement regarding the CRI investors. *253 In the interrogatories at issue here, petitioner seeks statistical and other information on respondent's CRI settlement procedures. Petitioner contends that the information sought goes to the crux of petitioner's equal protection argument that he was treated differently from docketed cases in the CRI litigation project because he was not offered an out-of-pocket cash settlement during the period his case was in appeals. Petitioner further contends that the information sought concerns the issues of whether respondent breached his discretionary authority and whether the respondent violated the covenant of good faith and fair dealing which petitioner argues is implicit in Form 872-A. In the motion for protective order, respondent contends that petitioner has not demonstrated any constitutional violation in connection with respondent's processing of their case and that most of the information sought is unavailable. Respondent further argues that information requested that is available is inadmissable under Rule 70(b)(1). Pursuant to Rule 70(b)(1), "information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved *254 in the pending case." In the Tax Court, the purpose of discovery is to ascertain facts which have a direct bearing on the issues before the Court. Ash v. Commissioner, 96 T.C. 459, 463 (1991); Penn-Field Industries, Inc. v. Commissioner, 74 T.C. 720, 722 (1980). "Discovery is not as broad in the Tax Court as it is in the Federal District Courts." Ash v. Commissioner, supra; Estate of Woodard v. Commissioner, 64 T.C. 457, 459 (1975). Generally, this Court will not look behind a deficiency notice to examine the evidence used, the propriety of respondent's motives, the administrative policy, or the procedure followed by respondent in making the determinations. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). In addition, the Commissioner's administrative treatment of other taxpayers has been considered irrelevant in reaching this Court's decision. Penn-Field Industries, Inc. v. Commissioner, supra.However, where unconstitutional conduct by respondent is alleged, this *255 Court has carefully scrutinized the determinations. Riland v. Commissioner, 79 T.C. 185, 207 (1982); Avers v. Commissioner, T.C. Memo. 1988-176, and cases cited therein. We hold that petitioner's interrogatories are unduly burdensome and irrelevant to the issues before the Court. We accept respondent's statement that certain information petitioner seeks, i.e., statistical information on the number of CRI investor audits, dates settlements were offered, status or outcome of these settlement discussions, is not maintained by respondent. We also accept respondent's statement that petitioner's request will place an undue burden on respondent, as it will force respondent to research all CRI files, many of which are in storage at Federal record centers, and locate and question all present or former IRS agents and appeals officers involved with CRI. Respondent would have to devote considerable time and expense to gather this information. A protective order is appropriate under such circumstances. Penn-Field Industries, Inc. v. Commissioner, supra.
In support of his allegations of constitutional *256 violations, petitioner alleges that among CRI investors docketed cases were given preferential treatment over nondocketed cases because docketed cases were offered cash out-of-pocket settlements. To prevail on such an allegation, petitioner must satisfy both requirements of a two-prong test. Penn Field Industries, Inc. v. Commissioner, supra at 723. First, the taxpayer must demonstrate that others similarly situated have been accorded more favorable treatment. Secondly, the taxpayer must show that the Commissioner's discriminatory selection of it has been based upon impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights. Penn-Field Industries, Inc, v. Commissioner, supra, and cases cited therein. In the present case, petitioner has not furnished any information to satisfy either of the standards set out in the two-prong test. Although evidence was presented which indicates that a few docketed cases were offered a settlement after 1984 and prior to this Court's decision in the Alexander case, this evidence is not relevant to our inquiry. Petitioner cannot make a realistic *257 claim that others similarly situated were treated more favorably as he was offered the same cash out-of-pocket settlement at the examination level that a small minority of CRI investors were offered while their cases were docketed. Petitioner did not accept this offer of settlement but chose to await this Court's decision in the Alexander case or perhaps an even more favorable settlement at the appeals level. Furthermore, the evidence presented at the hearing of these motions establishes that there was no formal or informal settlement policy for investors in CRI, whether their cases were docketed or nondocketed. Even if petitioner had satisfied the first prong of the test, petitioner's constitutional argument would still fail because he has not shown that his treatment by the IRS was based upon impermissible considerations or an arbitrary classification. If petitioner's requested discovery were granted, and that discovery revealed that some docketed cases were offered settlements and nondocketed cases were not offered settlements, this is neither an impermissible consideration nor an arbitrary classification. If some docketed cases were settled prior to this Court's decision *258 in Alexander v. Commissioner, T.C. Memo. 1990-141, from the evidence presented in this case it is evident that such settlements could have been attributable to a variety of reasons, even including possible miscommunication among respondent's personnel regarding settlement of these cases. There is no reason to believe that the very few settlement offers in CRI cases were dictated by an impermissible consideration or arbitrary classification. Instead, any such settlement offers by IRS personnel, like the offer made to petitioner at the examination level, represent efforts to reach settlements on cases to reduce the load of docketed cases before their trial dates. See Avers v. Commissioner, supra.Petitioner's failure to show that settlement offers were "based upon an impermissible ground forecloses the relevance of its interrogatories to the controverted issues." Penn-Field Industries, Inc. v. Commissioner, supra at 724. Petitioner was not systematically singled out based on an arbitrary classification nor was he intentionally treated differently than other CRI investors. See Avers v. Commissioner, supra. *259 The evidence presented at hearing indicates that respondent's agents did not intentionally or knowingly treat CRI investors inconsistently depending upon whether their case was docketed or nondocketed. Petitioner also argues that regardless of whether the information sought is relevant to show a deprivation of constitutional rights, the information sought is relevant to the issue of whether there was an abuse of discretion by the Commissioner or a breach of the covenant of fair dealing. Specifically, petitioner argues that an agreement to extend the statute of limitations includes an implied covenant by the IRS to attempt to settle the case expeditiously and in good faith. Petitioner also argues that the Form 872-A was executed in reliance upon the assurance of respondent's agent that the same settlement offered at the examination level would be offered at the appeals level. Petitioner contends that respondent's failure to offer the same settlement at the appeals level was a breach of the Form 872-A, that this breach was a denial of equal protection rights, and that the sought-after discovery is relevant to this issue. Petitioner has failed to establish a colorable claim as *260 to his discrimination allegations, and therefore is not entitled to discovery relevant to his discrimination claim. As to the other issues to which petitioner argues that the discovery sought is relevant, we find the discovery not to be relevant to such issues. None of the interrogatories in which petitioner seeks answers relate to the circumstances surrounding the signing of the consent forms or an alleged promise that petitioner supposes respondent's representative made. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest payable with respect to the portion of such underpayment which is attributable to negligence.↩